No. 20,380.

LOUIS AHNERT et al., *Appellants,* v. ERNESTINE AHNERT et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. WILL—*Contest—Mental Capacity of Testator—Undue Influence.* The testimony received in a contest of a will examined and held to be sufficient to sustain the findings of the trial court that the testator had sufficient mental capacity to make a will and that he was free from undue influence when he executed it.

2. SAME—*Execution—Name of Testator Written by Another—Testator Makes Mark—Will Valid.* Having mental capacity the will executed by a testator is not invalid because his name was written by another, he having made his mark, providing his name was written by his directions and in his presence.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed October 7, 1916. Affirmed.

*Frank L. Martin, Van M. Martin,* and *Charles M. Williams,* all of Hutchinson, for the appellants.

*Paul R. Nagle,* of Saint John, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to contest a will purporting to have been made by William Ahnert, who died August 24, 1914. As the result of an early marriage, a daughter was born who is designated in the will as Mrs. Jake Lay. In 1876 he was married to Lena Ahnert, and from that marriage six children were born, named William, Albert, Bertha, Walter, Nellie and Louis. In 1903 he obtained a divorce from Lena, who was given the custody of the minor children, and the property rights of the parties were adjudged. He married Ernestine Uhleman on January 15, 1908, and from that marriage no children were born, but she had two daughters by a former marriage, one of whom became the wife of Albert Ahnert, the son of the testator, and her other daughter married Arnold C. Hitz. It appears that an antenuptial contract between him and Ernestine had been made under which each was to own and control and finally dispose of his or her own prop-

erty free from any right of or interference by the other, except that at his death she was to receive $2000 and some property. In the will his son Albert was given a tract of land on the condition that he should pay to the estate $8500, including a $2000-mortgage on his property. Arnold C. Hitz was given a half section of land in Gray county, Kansas, while his sons Louis and Walter were each given $1000. His son William was given $5, his daughter, Mrs. Jake Lay, $5, and to his daughters Bertha and Nellie he gave each certain city lots in Hudson which are said to be of little value. He gave his wife, in addition to the $2000 provided for her by the antenuptial contract, city property of considerable value and the residue of his personal property. He also made a gift of $145 to the German church in Hudson. All of the sons, except Albert, to whom a bequest was made, and the two daughters joined in contesting the will, alleging that it was not in fact executed by the testator; that his name was attached to the will by another; that it was never read to him, and that he did not know or understand its contents. It was also alleged that it was executed when he was in a dying condition and did not have capacity to make a will. There was a further allegation that his wife and her daughter, Mrs. Hitz, exercised an undue influence over him and fraudulently induced him, in his weakness, to disinherit his own children and give the greater part of his estate to his wife and her daughter. A jury was called to aid the court in determining the facts, and special findings were returned that were somewhat conflicting, and some of them were not approved by the court. The jury found that the will was executed at the instance of the testator; that he dictated its terms, and that at the time of its execution he had mental capacity sufficient to understand the character, locality and extent of his property and its value, and that he knew the manner in which it was being disposed of and the persons to whom he was giving it. On the other hand, the jury found that he was not in full possession of his mental faculties when the will was executed; that he was unduly influenced by his wife, and that she exercised undue influence over him by continually nagging him about making a will. The court disapproved the latter findings, holding that there was no evidence to sustain the

findings of undue influence and no testimony in the case that she had ever spoken to him as to the manner in which he was to dispose of his property or the persons to whom he would give it. The court found, too, that the testator had mental capacity to make the will, and accordingly it was adjudged to be valid.

The questions presented for decision on this appeal are: Did the testator have mental capacity to make a will? Was it in fact executed by him? and was he unduly influenced to execute the will so that it expressed the mind of another rather than his own? These are questions of fact, and under the testimony in the case must be deemed to be settled by the findings and judgment of the trial court.

A question has been raised as to the capacity of the testator to make the will, principally because it was executed just a few minutes before he died. His last sickness was of but two or three days' duration. The day prior to his death he sent for a neighbor, with whom he had done considerable business, to write his will, and upon the arrival of the scrivener the testator gave him a description of the property and the names of the persons to whom it was to be given, and appeared to have no difficulty in describing the property which he owned or in stating the names of his children as well as the persons to whom he desired to give his property. The scrivener made notes of his directions, and after each notation was made it was read to him and received his approval, and the notes so made were used in preparing the will. This was done on Sunday, and the testator as well as the scrivener had an opinion that a will could not be legally executed on Sunday. It was arranged then to prepare the will and have it executed after midnight, and the testator watched the clock and indicated considerable anxiety lest he should not live until Monday. After the will was written it was read to him in the presence of the witnesses, and he called their attention to the fact that they had overlooked the gift to the German church, which indicated that his memory was stronger than that of the scrivener. Just after midnight a table was brought to the bedside and the will, as prepared and read, was laid before him and he was then able to sit up without assistance, but when he undertook to sign his name he was very nervous and requested the scrivener to write

his name and that he would make his mark, and this was done. The will had been previously read to him in the presence of witnesses, and they signed it in his presence at the time his name was attached to the instrument. About twenty minutes later he passed away. His illness was of an asthmatic character, and he experienced considerable difficulty in breathing, but the testimony tends to show that when he executed the will his mind was clear and the contents of the will were understood and approved by him. Having mental capacity, the execution is not insufficient because he only made his mark when his name was written by another. The hand may be guided or the signature written by another, the testator making his mark, without impairing the validity of the signature, providing it is done by his direction and in his presence. (40 Cyc. 1102.)

On the question of undue influence there is little room for the contention that the evidence is insufficient to support the finding of the court. It is argued that the fact that he devised the Gray county land to Hitz instead of his own sons Walter and Louis is a circumstance tending to show that he must have been under some undue constraint when the will was made. Testimony was offered to the effect that shortly after purchasing the land he expressed an intention to give it to these sons. He had stated to the sons and to others that his purpose was to place the sons on the land if they would furnish teams and implements, and ultimately to give it to them They did not furnish these farming facilities and they were not given the land or its possession. The change of mind may have been occasioned by his fear that they would not have the means to improve and properly farm the land, or it may have been an apprehension that they would be unable to pay the mortgage lien that existed against the land, or it may have been because the boys had always made their home with their mother from whom the testator had been divorced and they had failed to visit at his home after his marriage to Ernestine. It is said to be an unnatural act to give the property to his wife's son-in-law instead of his own sons, but the mere fact that a testator may make an unnatural disposition of his estate does not raise a presumption of fraud or undue influence. (*Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634; 40 Cyc. 1154.) It is not uncommon for testators to give to one child in preference to another or

to disinherit entirely members of their own families, and many go so far even as to bestow their bounties on strangers who have no claim upon them to the exclusion of relatives. As the property was owned by the testator he could make such disposition of it as he pleased, and if he had testamentary capacity and no undue influence was exercised upon him no one can question his choice of beneficiaries nor can any court set aside the will which he chose to make in conformity to the statutory requirements.

It is said that his wife and those to whom his property was given were close to him during his illness while his own children were not brought in until shortly before his death. It is true that the beneficiaries of his will had an opportunity to exercise an influence over him. His wife especially had an opportunity as well as a motive to influence his mind as to the disposition to be made of his property, but, as said in *Ginter v. Ginter*, supra, "the authorities are unanimous that power, motive, and opportunity to exercise undue influence do not suffice to authorize the inference that such influence has in fact been wielded." (p. 741.) It was also determined in that case that while unequal and unnatural provisions in a will may be considered in determining whether the will was the free act of the testator, they do not of themselves shift the burden of proof which rests upon those who assert that undue influence was exercised. While the wife on the day before his death twice mentioned the fact that a will had not been made by the testator, it is not shown that she took any part in the making of the will nor that she attempted to influence or control the disposition of the property. Objection was made to the exclusion of remarks made at one time by the testator to the effect that he wanted his boys to go out to Gray county and farm his land. It appears, however, that the testimony was subsequently received so far as it went to show his relations with his sons. The testimony had little to do with his state of mind when the will was made. Besides, there was considerable testimony of statements made by him, not only that he wanted the boys to go out and farm the land, but also of a purpose to give the land to them. Evidently there was a change of purpose in this respect as he made a different disposition of the land. A letter said to have been written by the testator to his brother about

two years before his death was offered in evidence which upon objection was excluded. It appeared to be incomplete, part of it written with a pen, part with a lead pencil, and a part of it seems not to have been in his handwriting. Nothing in the letter was pertinent to the case except a statement that he had purchased the Gray county land, which he said was to be for his two youngest sons, and these facts were brought out in the testimony and received without objection. The exclusion of the letter furnishes no ground for a reversal of the judgment. It will be affirmed.